v. Downey et al. Ms. Sawyer. May it please the court. I guess today is your honor that Mr. Burton has accused the defendants of being deliberately indifferent to his serious medical needs. The district court found that the defendants did not have qualified immunity and this court should reverse that decision and find that the defendants are entitled to qualified immunity. In a nutshell, this case is about Mr. Burton's disagreement with the treatment that was provided. He wanted a different pain medication than what was prescribed, he wanted outside physical therapy instead of in-house physical therapy, and he wanted more intense treatment for his rash and rectal bleeding, which those two conditions he admitted resolved themselves without treatment, or without more intensive treatment than what was provided. What period of time are we dealing with his incarceration? I'm sorry? What period of time, because it looks like he was in here for a pre-trial detainee. That he was. Was this the whole time or was he tried and put it somewhere else during this period of time? He was detained at Jerome Combs Detention Center from September 23rd of 2009 through March, I believe, 17th of 2011. He was tried during that time and there was also a sentencing hearing. He was transferred from the county jail to the DOC. So is all this an ongoing... Mr. Burton has alleged... Mr. Burton has alleged that he did not receive adequate treatment throughout his stay at Jerome Combs. It is our position that he received more than adequate treatment. I know, I just want to stretch a time. First of all, I didn't like the initial... He came in with nine different prescriptions or something? Nine pills? prescribed or continued some of those prescriptions. Menard contacted his treating orthopedic surgeon and verified what sort of pain medications Mr. Burton should be on and ordered that those pain medications be given to him. How long are we looking at as far as what he's claiming? He is claiming that he was... Are we looking at two years? Are we looking at two weeks? What's the denial? When he's talking about the denial of pain medication? So Mr. Burton claims that he did not receive any pain medications until October 1st, which is about 10 days after he's booked at the county jail. That claim is blatantly contradicted by the medical record. And he may have a vague accusation during his deposition that he didn't consistently receive Ultram or his pain medication. However, he couldn't... He did have... I don't want to... I'm just looking at the whole time. We have a deliberate indifference... for what length of time? Mr. Burton's accusation is the entire 18 months that he was at the county jail. This court has been clear that in addressing a deliberate indifference claim, we need to look at the entirety of the medical treatment provided to the inmate. And here, Mr. Burton received extensive treatment during his 18 month stay. He was seen by the Jerome Combs medical staff a total of 26 times. He was taken to his own orthopedic surgeon four times over the course of six months as the follow-up appointments were done within the time period that the orthopedic surgeon recommended. And the only reason he stopped going to his orthopedic surgeon, Dr. Verghese, was because he adamantly refused on May 14th of 2010 to continue with Dr. Verghese. He was treated for a variety of ailments, both acute and chronic. The jail staff went above and beyond what Dr. Verghese recommended. So Dr. Verghese, on the 29th of September, which is the first time Mr. Burton sees him after being booked into the county jail, Dr. Verghese recommends that he take Ultram for seven to ten days and then switch to over-the-counter Tylenol and Motrin, which I think we agree is a medical judgment that Verghese made and the defendants were entitled to rely upon. The defendants continued his prescription because of his complaints of pain after those seven to ten days and continued them into the end of October. When Mr. Burton complained of pain again the following year, they gave him the Ultram again in September of 2010 and he took that as needed until his transfer to the DOC. Importantly, Mr. Burton always had access to Motrin and acetaminophen or Tylenol. Those were never denied to him. He wanted a narcotic and his physicians, including his orthopedic surgeon, did not think that was appropriate and that is why he did not receive it. Well, the Ultram was a narcotic substitute, wasn't it? That it is, Your Honor. Prescription strength. Yes. So it's a dispute over one or the other, a medical dispute over one or the other. Exactly. He wasn't being ignored. He was getting what the doctor prescribed. Exactly. He wanted Vicodin, which is what one of his prior physicians prescribed for him. The jail staff and his orthopedic surgeon did not think that was appropriate. I want to briefly address his claim that he was denied a second mattress. Mr. Burton, he claims that he was denied the second mattress and that as a result he was in more pain from his avascular necrosis. It's our position that that is pure speculation. Mr. Burton is not a, he has no medical training and his physician, Dr. Verghese, testified that a second mat would not have any effect on his avascular necrosis, his hip problem, and Menard concurred with that decision. The district court found that it was a, the district court removed that claim from deliberate indifference to a medical need to a cruel and unusual punishment, but plaintiff has not presented any cases or other law indicating that having only one mat deprives him of the minimal civilized measure of life's necessities. As stated by the district court. There was also some issue about when he was on crutches, was he hiding pills in the crutch? Yeah, to, I want to make sure we're clear on the record. He was not caught hiding pills in his crutches until December 28th of 2010. So that's, you know, that's towards the end of his 18 months at the county jail. So he was on crutches that long? Yes. Dr. Verghese testified that he expected Burton to wean himself off crutches. Dr. Verghese gave him instructions on how to do so and expected him to do that on his own. Burton didn't comply with that. He didn't make any, you know, attempt to wean off of his crutches and he continued on his crutches for the stay at Jerome Combs. At one point he was given a walker in March of 2010. He admitted during his deposition that Menard showed him how to use the walker and the hope was that it would relieve some of the elbow pain he had from using the crutches. But Burton testified that he didn't like the walker, he didn't want to use it, so he went back to the crutches. I want to reserve the rest of my time for rebuttal unless there's another question. Surely. Thank you, Ms. Sawyer. Ms. Best. Please support. Good morning, Your Honor. Susan Best on behalf of Derek Burton. I just want to point to the first argument that we do make in our brief very briefly because it is there. Procedural and jurisdiction-wise, procedurally, yes, the district court denied defendant's motion for summary judgment. Thereafter, we were appointed counsel for trial. This appeal has ensued. The jurisdiction, we do believe that defendant's qualified immunity argument is based on disputed facts, which would not be appropriate in this court. However, if the court is inclined that there is jurisdiction, we'll move forward to the merits of the case, which we put forth in the brief. Our argument clearly is that the defendants were deliberately indifferent to plaintiff's serious medical conditions and needs, and I want to be clear about the serious medical needs and conditions that were at play here, and Your Honor was correct to point out that this is across the board of 18 months, that these types of issues were going on and what plaintiff is alleging. These serious medical needs and conditions are, one, immediate need for pain medication and tapered withdrawal from his Vicodin addiction. Number two, pain management for chronic pain that he had prior to coming to jail and his progressive disease of vascular necrosis, which I'll refer to as AVN. Number three, physical therapy for AVN hip recovery and the need for continuous doctor appointments for this progressive disease. And number four, adequate treatment for this reoccurring rash that he had had for over 12 years and rectal bleeding. The ways in which the defendants acted deliberately indifferent to these medical needs and conditions is, A, by stopping, when he first comes to the jail, stopping all plaintiff's medications when he arrived and not providing pain medication for over a week is what plaintiff is alleging, and that week is based on plaintiff's testimony and for prescription documents that are a part of the record. B. He testified that he received Ultram as soon as he saw the physician assistant, which was within 35 or 36 hours of his admission to the jail. His testimony was kind of a minor technical, but he testified to that that's when it was prescribed, but he did not receive any type of pain medication until October 1st is what he had testified to, and with the prescription documents that show that October 1st is when these prescriptions are coming out. Right. I understand that that's what one aspect of the record shows, but his testimony was that he received the Ultram soon after seeing the PA, which was within about 35 hours of his admission to the jail. So at most he went less than a day and a half without pain med. And, Your Honor, I would respectfully disagree that when you look at the specific deputization testimony, I think we very much cited it in our brief by line that he's stating that, yes, the prescription was prescribed by Mr. Manard on the 25th, but that he did not receive it until after that on October 1st. But doesn't his own statements acknowledge that he received it within two days? Not the prescription, but he received some medication, Ms. Best? No, he did not testify that he received it two days after. He testified that it was prescribed by Mr. Manard at that time. He received nothing within, as Judge Sykes said, within a day and a half? Yes. No, I mean he did not. No, Your Honor. So he did not receive any pain medication for over a week until October 1st. What's the duration of this medication for his relieving pain? Well, the pain medication that he was on when he first came to jail was both Ultrium and Vicodin. And prior to that, he had been on Vicodin for over a year. And it was actually, he was on Narco, which is a bigger dosage of Vicodin because that he had been taking it for a year, so needed more, due to this very painful surgery that he had right before he came into jail. So at that time, he was prescribed both Ultrium and Narco, which were to last, I believe, if we put it in the brief, either 23 days or it could have been up to two days that he would have had this prescription for both of those painkillers. Because it's somewhere that shortly before he went into prison, he took Narco? Yes, he did. He went in, he was arrested on September 22nd. He took the pill at that time on that night, and he was, I think on the 23rd, early morning is when he entered jail. Okay. I've got to go back to, excuse me for interrupting, but I have found the answer to my question, and it's not consistent with what you just told us. He testified in his deposition at page 77 that the medications were prescribed by Menard, the PA, on September 25th. That's a day and a half after he enters the jail. And he testified earlier that he received Ultrium every six hours, although he claims he had a real hard time getting it, and there were times when I didn't receive it, but that's just a vague reference. And then he testifies later in that line of questioning. So they ordered those drugs for you. Looks like Heather Gill, another defendant, ordered those later that same day at the very end of the second page of the medical notes, and he says, yeah, she may have. And then the question is, okay, you have no reason to dispute that she didn't order the drugs. No. Okay, so you received those medications when they arrived? Yes. So he is admitting that he received the medications. They were ordered on the 25th, and he received the medications. And, Your Honor, I read that as both that they were prescribed and that they put in an order for the medications on the 25th. And he did not receive those after being prescribed and ordered the pain medication. Okay, and you correct me if I'm misinterpreting your testimony, but I believe you said you received them, but sometimes inconsistently, depending upon the officer's schedule. So that is a claim about later. Correct, Your Honor. This is not a claim that they were delayed for a week. If that were the case, we would expect to see him say that in response to this line of questioning. And he never said that. He's saying that now in an affidavit? He is. Which contradicts the deposition testimony, which is inappropriate. And I'm sorry, I cannot persuade you, Your Honor, but again the wording of prescription and ordering the drugs on the 25th. And received. And his claim is only that maybe they came inconsistently and he really wanted the Vicodin. But the belated attempt to claim that there was a one-week delay in the face of this deposition testimony, it seems to me, is an attempt to vary what he said at his deposition. Well, even if it was that it was just within that time period, I still think it needs to be considered of the amount of pain that he was at the time when he entered the jail. I mean, he's just getting out of a core decompression, drilling into your hip and your bone, and he has a ---- Well, he was admitted to the jail a week after the surgery, not a day or two. He had the surgery on the 16th. And then he, yes, was arrested on the 22nd. Six days, so not quite a week. And the fact that he was taking Vicodin, and not just Vicodin, again, Narco, which is a heightened level of Vicodin, throughout the past year, and on both Ultrium and Narco. So his tolerance is very high, and admittedly that he is addicted to the Vicodin, which that was not considered by the defendants when the medications are being confiscated. How do you identify an addiction? When you show up at the prison, you got to claim you're addicted? You got to have it every day or every six hours or whatever it is? He claimed that he told Mr. Maynard and when he came to the jail that he was addicted and that he had this, had been taking Vicodin for over a year, and that he would have had if he stopped taking it. So one every six hours? That was the prescription, I believe, Your Honor. And he talked about how he was nervous about the withdrawal symptoms and that was never cared for or brought to the attention of the defendants to do anything for that, which he did, in fact, have withdrawal symptoms for not having the Vicodin. The other ways in which the defendants had deliberately indifferent to his medical needs and conditions is be refusing to contact his primary physician, prescribe effective pain medication. As we see that he was prescribed Altrium that was not effective, again, for the same reasons that he was on Vicodin for a very long period of time, and that he was not provided a second med, even with a court order, stating that the prescriptions need to be provided to Burton and that he should get a second med. C, failing to provide him with physical therapy and failing to schedule doctor's appointments to keep on track of the progressive disease that he had, which is necessary because it is likely, you know, it can become more painful and it is more progressive and needs to be monitored. And finally, D, failing to examine his rectal bleeding and prescribe previously prescriptions for his reoccurring herpes simplex that, again, he had for 12 years and he knew what prescriptions were going to work. With respect to his physician not being contacted, this is a doctor that had been his physician for a very long time and knew exactly what type of prescriptions would work for him and which ones would not. Those were never contacted, or the defendants never contacted him for that. With respect to the physical therapy to touch on, it was recommended that he do physical therapy and that he go to physical therapy. And because he did not receive it, he was on crutches throughout his whole time period that he was at jail, which created strain on his elbow and had issues with his legs, which he could not get off crutches for 18 months. Even though it was recommended, it was not provided and there is a dispute. He testifies that he did not receive instructions on how to do physical therapy in his jail. I know there's one of these towel exercises. It sounds trivial, but at the same time, if you don't do them, it's dry. I don't know. You say he just wasn't taught how to do whatever it is, some kind of isometrics or something? Yes, he wasn't given adequate instruction on exactly what he needed to do and he wasn't able to do it because of the pain that he was consistently in. So he obviously needs somebody else manipulating him and he can't do it on his own. Is that the problem? Yes, and that he wasn't given adequate instruction on what exactly he needed to do that would help him get off the crutches. And he's on them for the whole 18 months? That's correct, Your Honor. Well, he was given instructions. He just claims they're inadequate, right, Ms. Bess? Yes, at one point, the nurse did provide some instructions, but did not provide any, you know, they were inadequate. He didn't understand them of how he was going to better himself and get off the crutches. So during that 18 months, he stayed in pain and on crutches. With respect to the MAT, there is, you know, for a person to have chronic pain and have this surgery and have this progressive disease rise to the level of, and with the court order that defendants acted deliberately indifferent by ignoring that court order and considering his different medical needs at that time, which a second MAT would assist him in. Ignoring the court order isn't a constitutional violation. You're referring to the court order for the second mattress? Right, Your Honor. I mean, that's not a medical determination that he needs this and so that the medical defendants were deliberately indifferent to a serious medical need. I think it is part of the overall, when you look at all the, I think, acts over this time period of 18 months, and to completely just ignore and say that Judge Erickson does not run this jail  Well, that's true. He was looked upon as being a pest, a nuisance, and they were going to take his medical needs and conditions seriously. And I think that, you know, I see that amount of time, but to wrap that up, I think there is case law that supports that this would be a deliberate indifference along those lines of defendants being, treating conditions as pests or as a nuisance and not getting effective treatment where here it's the pain medication and that is not working for the 18 months. So I would ask that Your Honors uphold the decision of the District Court. Thank you, Ms. Burton. Ms. Soar? I want to address a couple of things. First of all, counsel was saying that Mr. Burton suffered from a Vicodin addiction and had withdrawal symptoms. Now, a couple of things with that. First of all, Dr. Zumwalt, who was the prescribing physician for the Vicodin, testified that the dosage that Mr. Burton was on and for the time period that he was on it was not addicting. And Zumwalt then backed off a little bit and said there might be a little bit of withdrawal, but nothing major. That's on page 59 of his deposition. The plaintiff claims that he had withdrawal symptoms, but that's not supported by any medical record, including medical records of Dr. Verghese, who he saw just six days after entering the jail. The physical therapy that was prescribed, counsel indicated that someone else needed to manipulate him because he was in too much pain. I do want to point out that the physical therapy prescribed by Dr. Verghese was exercises that Dr. Verghese approved that Burton could do on his own, in his cell, and Burton admitted that he was provided instruction on those exercises. His failure to actually do the exercises does not constitute deliberate indifference. Regarding the issue of how long it took for him to get the Ultram after his admission into the jail, what is the state of the record on that now? Do we just have his deposition testimony, or was there an affidavit put in later with this October 1st date? So his deposition testimony was, as you read, and in response to our motion for summary judgment, Mr. Burton claimed that he did not receive any Ultram or any pain medication at all until October 1st. And that was just in the brief? That's not in an affidavit? In the affidavit. He attached an affidavit. In the affidavit he says that he did not receive any pain medication until October 1st of 2013, which we know is incorrect. His affidavit contradicts not only the deposition testimony that you read, but also his medical records, both Mr. Menard's and Dr. Verghese's. He told Dr. Verghese on the 29th that he was being provided Ultram at the jail, and he admitted to that, and that's when Dr. Verghese extended the prescription. Thank you. Deliberate indifference requires, there's a knowledge requirement. So the plaintiff has to show that the defendants knew that there was a substantial risk of harm and that either the defendants wanted harm to come to him or completely disregarded a risk of harm. At the very least, Mr. Burton has not shown that the defendants had knowledge that he did not receive the pain medication or that he needed pain medication from the time of his booking until he saw Menard, so in those 35 hours. But he also hasn't shown that the defendants were aware of any sort of deprivation of pain medication until October 1st. In fact, the medical administration record, which can be found at docket entry 108-16, page 51, indicates that he was receiving Ultram starting on the 25th. He received it three times on the 26th, two times on the 27th, et cetera, through the 1st of October. That record is completed by the correctional officers when they pass out the medication to the inmates. So at the best, the defendants would see that record and know that he was receiving as he claimed. And if there's no other questions, I would just ask that this court reverse the district court's decision. Thank you. Thank you, sir. Thanks to all counsel. Case is taken under advisory.